UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JARON THUNDER HAWK,<br><br>Defendant. | CR. 14-50008-JLV<br><br><br><br>ORDER |

## INTRODUCTION

Defendant Jaron Thunder Hawk, appearing *pro se*, filed a motion for compassionate release. (Docket 41). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Thunder Hawk's motion. (Dockets 44, 45, 49, 50, 53, 54). For the reasons stated below, defendant's motion is denied.

## STANDING ORDER 20-06

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a

---

[1] See https://www.sdd.uscourts.gov/so2006 ("SO 20-06"). SO 20-06 was amended on October 21, 2020, after this case was ripe for resolution. See https://www.sdd.uscourts.gov/socraa. The amendments have no impact on the court's analysis of this case.

procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. ¶ 1. The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already. These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. ¶ 4. Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

      c.      Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

      d.      Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id. The standing order contains provisions for sharing of critical information among the FPD, the U.S. Attorney, the Probation Office and the court. Id. ¶ 5. The priority of briefing is set according to the different categories of assignment of a defendant. Id. ¶¶ 6-8.

## MR. THUNDER HAWK'S CLASSIFICATION

On June 10, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Thunder Hawk's case as an Intermediate Priority case. (Docket 42).

## FACTUAL BACKGROUND

On July 29, 2014, Mr. Thunderhawk was sentenced to a term of imprisonment of 96 months for abusive sexual contact in violation of 18 U.S.C. §§ 2244(a)(5), 2244(3) and 1153. (Dockets 38 & 39). Based upon a presentence study and report ordered by the court,[2] Mr. Thunder Hawk's

---

[2]The court ordered Mr. Thunder Hawk's presentence study and report ("PSR") to be maintained by the U.S. Probation Office under seal in its case files. (Docket 32). Though not on file with the court, the PSR is readily available to both government and defense counsel.

advisory guideline range was 188 to 235 months based on his criminal history category I.   (Dockets 32 & 37 at p. 7).

Mr. Thunder Hawk is currently an inmate at the United States Penitentiary in Tucson, Arizona ("USP Tucson"), a high security facility with an adjacent minimum-security satellite camp.   (Docket 41 at p. 3); Fed. Bureau Prisons, https://www.bop.gov.locations/institutions/tcp/ (last checked Jan. 13, 2021).   The total inmate population at USP Tucson is approximately 1,278 persons.   Id.   As of January 13, 2021, there were 164 active COVID-19 cases between inmates and staff, eight deaths as a result of COVID-19, no staff deaths, and 688 inmates and 31 staff had recovered at USP Tucson.   Id. https://www.bop/gov/coronavirus/ (last checked Jan. 13, 2021).

Mr. Thunder Hawk has a scheduled release date of August 21, 2021. (Docket 44, p. 57); see also https://www.bop.gov/inmateloc/.   Mr. Thunder Hawk has currently served 88.6 percent of his sentence, and under his current status in the BOP, Mr. Thunder Hawk's home detention eligibility date is February 21, 2021.   Id. at 57-58.   Mr. Thunder Hawk is 27 years old.   Id. at p. 57.

## MR. THUNDER HAWK'S MOTION

Mr. Thunder Hawk's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his personal health conditions during the COVID-19 pandemic, and he argues his very near

4

projected release date also warrants relief. (Docket 41). Mr. Thunder Hawk's medical records confirm the following medical conditions:

- Major depressive disorder. (Docket 44 at p. 27);
- Generalized anxiety disorder. Id.;
- Chronic viral hepatitis C.[3] Id.; and
- Retinopathy and eye orbit injury. Id. at pp. 27-28.

Mr. Thunder Hawk was diagnosed with hepatitis C in February 2020 and agreed to the hepatitis C treatment protocol in March 2020. Id. at pp. 6-10. Mr. Thunder Hawk is prescribed venlafaxine (Effexor) for major depressive disorder and medication for acne. Id. at pp. 1, 32. He has been receiving psychological services since his term of incarceration commenced. See Docket 50.

In a supplement to the *pro se* motion, defense counsel argues "Mr. Thunder Hawk is among those at heightened risk of exposure to COVID-19 in custody." (Docket 49 at p. 8). Counsel points out the virus is spreading more quickly through the federal prison system than the general public and argues the custodial setting inhibits self-protection measures like social distancing and increased hygiene. Id. at pp. 11-13. Furthermore, counsel claims Mr.

---

[3] "Hepatitis C is a viral infection that causes liver inflammation, sometimes leading to serious liver damage" according to Mayo Clinic. See Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/hepatitis-c/symptoms-causes/syc-20354278 (last accessed Jan. 14, 2021). Reportedly, chronic hepatitis C is usually curable with oral medications taken every day for two to six months. Id.

Thunder Hawk's mental health conditions impact his physical health and may result in poor health outcomes.  Id. at p. 14.

Mr. Thunder Hawk represents that if released from custody, he would "[have] family and financial support . . . guaranteed."  (Docket 41 at p. 2). According to counsel, he plans to reside with his mother, Jennifer Thunder Hawk, in Porcupine, South Dakota.  (Docket 49 at p. 21).

### UNITED STATES' OPPOSITION

The government opposes Mr. Thunder Hawk's motion for compassionate release.  (Docket 53).  First, the government argues Mr. Thunder Hawk has not exhausted his administrative remedies because he brought his motion before the 30-day period had expired after making a request for release to the warden.  Id. at p. 3.

Second, the government generally asserts that "[t]he existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself . . . provide a basis for a sentence reduction."  Id. at p. 8.  The government urges the court to recognize the significant measures taken by the Bureau of Prisons ("BOP") to address and control the transmission of the coronavirus through a lengthy and detailed six-phase action plan.  Id. at pp. 8-10.  According to the government, BOP has implemented phase six of the plan, which currently governs its operations.  Id. at p. 9.  Some of the protocols included in phase six include: requiring inmates to be secured in their assigned cells/quarters for 14 days to stop the spread of

the virus, limiting the movement of inmates and detainees between facilities, canceling all official staff travel, providing face masks to all inmates and staff and encouraging them to be worn, suspending social visitation and implementing screening and quarantining measures.  Id. at pp. 9-10.

Third, the government argues denial is warranted because Mr. Thunder Hawk has not demonstrated "extraordinary and compelling reasons" for compassionate release.  Id. at p. 11.  Though recognizing Mr. Thunder Hawk has a diagnosis of hepatitis C and suffers from mental health conditions, the government argues these ailments do not put him at greater risk from COVID-19.  Id. at p. 14.  The government indicates none of his conditions is on the list that the Centers for Disease Control and Prevention ("CDC") identified as increasing the risk or potentially increasing the risk associated with COVID-19. Id. at pp. 14-15 (referencing https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/peopleat-higher-risk.html) (last accessed by government counsel on July 9, 2020).  According to the government, Mr. Thunder Hawk's hepatitis C does not interfere with his ability to provide self-care while in custody, and his conditions have been and will continue to be treated and managed while in BOP custody.  Id.

Finally, the government argues the 18 U.S.C. § 3553(a) factors weigh against granting Mr. Thunder Hawk compassionate release.  The government submits Mr. Thunder Hawk would pose a danger to public safety if released. Id. at pp. 16-17.  Mr. Thunder Hawk's offense involved sexually touching the

vaginas and vaginal areas of three minor victims for his sexual gratification. Id. at p. 17.   In addition, the government argues "the very nature of the crime does not warrant an additional reduction."   Id.; see also Dockets 21 & 22. The government reminds the court Mr. Thunder Hawk received a downward variance of 96 months at sentencing, and an additional reduction would result in a sentencing disparity with other similar defendants.   (Docket 53 at p. 17).

In reply, Mr. Thunder Hawk argues hepatitis C is a significant condition that interferes with the normal immune responses to a viral infection.   (Docket 54 at p. 2).   He alleges his immune system is compromised by hepatitis C, putting him at risk during the COVID-19 pandemic.   Id.   Mr. Thunder Hawk also claims he is not a risk of danger to others.   Id. at p. 5.   He requests the court consider the various educational courses he has participated in and his work history detail while incarcerated.   Id.   If necessary, Mr. Thunder Hawk submits the court could address any concerns of danger through a period of home confinement and other conditions of release.   Id.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden

> of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The government argues Mr. Thunder Hawk has not exhausted his administrative remedies because his motion was filed before the lapse of 30 days. (Docket 53 at p. 3). Mr. Thunder Hawk suggests the court can rule on the motion on or after July 23, 2020, which would satisfy the 30-day waiting period. (Docket 54 at p. 1). The dispute over administrative exhaustion need not be resolved because the court concludes "extraordinary and compelling reasons" do not exist to warrant Mr. Thunder Hawk's early release.

### **Extraordinary and Compelling Reasons**

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). That task was left to the United States Sentencing Commission. "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling. U.S.S.G. § 1B1.13 comment. n.1. The four categories have not been updated since December 2018 when the First Step Act became law.[4]

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step Act.[5] See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v. McCoy, 981 F.3d 271 (4th Cir. 2020); United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); and United States v. Gunn, 980 F.3d 1178 (7th Cir. 2020).

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and

---

[4] The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two shy of the four it needs to amend the [U.S.S.G.]." United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

[5] The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue but declined to do so. United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." Brooker, 976 F.3d at 234. The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances." Id. The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable." Id. at 235. "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id. at 237; see also Gunn, 980 F.3d at 1180 (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion"); Jones, 980 F.3d at 1111 ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); McCoy, 981 F.3d at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." Brooker, 976 F.3d at 237.  See also McCoy, 981 F.3d at 284 (same); Jones, 980 F.3d at 1111 (same); Gunn, 980 F.3d at 1180 (same).   The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Mr. Thunder Hawk relies on "the totality of his health conditions, his incarceration, and the COVID-19 pandemic" as extraordinary and compelling reasons warranting compassionate release.   (Docket 54 at p. 3).   Despite the expanded authority under the First Step Act, the court finds Mr. Thunder Hawk has not met his burden of proof by presenting "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).

Mr. Thunder Hawk is 27 years old.   The CDC indicates adults of any age *are* at increased risk of severe illness from COVID-19 if they have certain conditions, including cancer, chronic kidney disease, COPD, Down's syndrome, heart conditions, immunocompromised state from solid organ transplant, obesity, pregnancy, sickle cell disease, smoking and type 2 diabetes.   See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-with-medical-conditions.html (last updated December 29, 2020). Mr. Thunder Hawk has none of the conditions the CDC finds increase the risk of COVID-19.

The CDC has also identified certain conditions that *might* increase the risk from COVID-19, including moderate to severe asthma, cerebrovascular disease, cystic fibrosis, hypertension, immunocompromised state from blood or bone marrow transplant, HIV, or use of immune weakening medicines, neurologic conditions, overweight, liver disease, pulmonary fibrosis, thalassemia and type 1 diabetes. Id. Mr. Thunder Hawk has none of these conditions.

To get around this, defense counsel argues Mr. Thunder Hawk is more at risk of COVID-19 because hepatitis C affects the liver. (Docket 49 at pp. 16, 19). The CDC has specifically addressed hepatitis B and hepatitis C within the context of liver disease and the risks of COVID-19. See What to Know About Liver Disease and COVID-19, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last accessed Jan. 14, 2021). The CDC indicates "we have no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COIVD-19 or having severe COVID-19." Id.

The court finds Mr. Thunder Hawk has not met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i). No evidence has been presented that hepatitis C is associated with a higher risk for severe illness from COVID-19.

13

Based on the court's detailed review of the medical records, Mr. Thunder Hawk's hepatitis C, mental health conditions and eye problems do not come within the conditions of concern to the CDC during the COVID-19 pandemic.

### 3553(a) Factors

Additionally, the court concludes the § 3553(a) factors do not support relief. A detailed analysis of these factors is unnecessary since Mr. Thunder Hawk has not demonstrated "extraordinary and compelling reasons" for release. Suffice it to say, the court granted a significant downward variance to Mr. Thunder Hawk at sentencing. The low end of his guideline range was 188 months and the court sentenced him to 96 months. That sentence was chosen with care to reflect the seriousness of his offense, provide appropriate punishment and protect the community. (See Docket 53 at p. 17 (quoting the Statement of Reasons)). Mr. Thunder Hawk is nearing the end of that term and is eligible for home detention on February 21, 2021. (Docket 44 at p. 57). Early release is not warranted.

### ORDER

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 41) is denied.

Dated January 26, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE